You may be seated. Council, take your time changing in, changing out. We've got two more standing in line. Two more lawyers, one more case. Mr. Hatch? Good morning, Your Honor. May it please the Court. Ben Hatch on behalf of AdvanFort Company. Your Honors, the Court, my client below brought suit in its home forum for redress for damage done to its vessel in Saudi Arabia against the Saudi Port Authority, which is part of the government of Saudi Arabia, and against Zamil Offshore Services, which is a corporation within Saudi Arabia, but which is owned by a very prominent family with ties to the royal family and to the government of Saudi Arabia. The district court below overrode that forum choice and directed that the case be dismissed on the grounds of forum nonconvenience. And in so doing, I believe the district court did three things that are unprecedented, and I'm sure my able colleague will correct me if I misspeak on any of these, but I believe both parties agree that we could find no case where a district court had granted forum nonconvenience dismissal in favor of a defaulted defendant. And in this case, the Saudi Port Authority was in default, and nevertheless, Judge Brinkema directed that the case be dismissed against the Saudi Port Authority. My colleague will argue that that doesn't preclude dismissal, but my first point is just both parties I believe agree that no court has ever done so, and I don't believe it's appropriate to grant that. We cite an 11th Circuit unpublished case, the Tyco case, but the principle is simply that a defaulted defendant is not entitled to assert procedural motions, and in fact here didn't even attempt to assert a motion to dismiss for forum nonconvenience, and therefore it could not have been granted as to the Saudi Port Authority. The second thing... So do you want us to create a blanket rule that a single defaulted defendant can prevent dismissal for forum nonconvenience? I don't believe the court need create a blanket rule. I do believe it's correct that, number one, that the dismissal at the very minimum as to the Port Authority should be reversed by this court, but Judge Thacker, your point gets to, well, what effect does that have on the defendant, Zamil, that did appear and did move to dismiss for forum nonconvenience? I don't think that the court has to establish a per se rule that never can another defendant assert forum nonconvenience. I think the court can just apply the forum nonconvenience analysis. One of the aspects of that analysis is whether it would result in whether the forum court can hear all the claims, whether it results in inconvenience to the parties. And so it's certainly relevant to that analysis that here, if defendant Zamil was granted forum nonconvenience dismissal, in our view, the right outcome, that would still result in a defaulted defendant, Saudi Port Authority, proceeding in Alexandria Federal Court. And so you'd have a domestic proceeding against the defaulted defendant. You would have a forum proceeding against a non-defaulted defendant. You would be having, you know, similar proceedings arriving from the same facts. And there are, we said the Dirk case, which is out of circuit, but I think it's a general proposition that you typically would try to avoid having claims proceed in different forums. So I do think it's a strong factor against granting forum non for defendants Zamil, but I don't think the court needs to establish a per se rule. I mean, how would you be prejudiced because the Port Authority would still be in default in Saudi Arabia, and you just have one trial as opposed to two? Well, Judge Floyd, I don't agree with that because, first of all, one of the key elements and why it matters that a defendant appear and ask for forum non is they have to agree to the jurisdiction of the forum court to which they're seeking transfer. And that would involve agreeing that there's personal jurisdiction, and it also involves agreeing that, for example, there's no bar of sovereign immunity, which could pertain here. The parties dispute that. I can talk about it. But they would have to, if the Port Authority had shown up and they had moved for forum non, they would have had to also agree that they would not be asserting sovereign immunity in the Saudi courts. They've done none of those things. So I see nothing that precludes them, if we brought this suit in Saudi Arabia, that nothing that would preclude them from saying, well, A, we're not defaulted in Saudi Arabia. We appeared here in Saudi Arabia. There's no evidence in this record that Saudi Arabia would recognize a default here in the United States. And ultimately, Judge Brinkema overruled the default that the clerk had entered and granted dismissal on the suit. So I would presume they would feel free to argue that they're not defaulted in Saudi Arabia, and they may also feel free to assert sovereign immunity. They've made none of the record that an appearing defendant would need to make to say that they could be sued in Saudi Arabia. So these are all reasons why you should not grant forum non-convenience to a defaulted defendant, point one. Point two is, getting back to my list of unprecedented items, Judge Brinkema, in sending the case to Saudi Arabia, recognized that there was a dispute between the experts, each side had proffered in this case, about whether the case could be tried in one court in Saudi Arabia with default defendants or whether it would have to be split. And to, I believe, avoid that factual dispute or expert dispute, she said, well, it doesn't even matter if the case has to go in front of two courts in Saudi Arabia. We don't have any cases that say that can't be done. But the flip side of that coin is, I don't believe there's any cases that have ever done that. That is, granted forum non-convenience dismissal, sending a case to Saudi Arabia, and the court has to split their case, and... And what would be the problem with that, given that the two courts are specialized? Well, I think the problem with that, just like we would have here in the United States, obviously we try to avoid having parallel proceedings on the same set of facts against common defendants. You're having to mount the investment of doing two cases... But would the two courts be deciding separate issues? To some degree, to the extent that the defendants may assert different defenses. None of that, to be clear, Judge Thacker, I believe, is in the record about how... What are the two courts in Saudi Arabia? The two courts are the Board of Grievances, which would... What's that comparable to here? Can you make it? As I understand it, and from the expert testimony, it's the court that would hear claims against the government and government entities. Now, they may hear other claims, but here the Port Authority would have to go before that Board of Grievances court. Our claim against Defendant Zameel would have to go to the Commerce Court, which in my view is more like a general commercial litigation analog here. Or a circuit court. Not a... Yeah, and in Virginia, yes. So if you're going to sue the sovereign, you've got to go to a special court? You have to go to a special court. They make an argument that it's possible that the sovereign court, the Board of Grievances, could decide to essentially adopt or bring in Zameel into that case. But number one, there was no discovery granted on that point, and Judge Brinkema didn't rely on it. And at the end of the day, it's a discretionary decision that would be in the future. So as the record stands, our case would have to proceed in front of two different courts in a forum jurisdiction. And again, I think that's unprecedented that any court has required that. The third item that I'll grant you is more fact specific to our case, so maybe it's not surprising that there's no other cases like it, but that I believe is unprecedented, is that my client did previously sue in Saudi Arabia the defendant Zameel, not the Port Authority, but defendant Zameel, for issues of fire related to this same ship. So we have sued over there, and we put into our complaint detailed allegations why, in our view, that process was a not appropriate judicial process. Influence on witnesses, changed testimony, witnesses unwilling to testify, and court irregularities. Now, you could chalk that up to the litigant that lost, perhaps. But on this record, they are the unrefuted allegations of what happened in that prior litigation. And so, Judge Brinkema, I think, in her decision said, well, you're making a generalized indictment on the Saudi Court Authority, and respectfully, I disagree with that. Our evidence about why Saudi Arabia was not an appropriate forum was broad and deep, so we had an expert witness who issued an- An expert witness, you said there were two expert witnesses. Yes, yes, Your Honor, we had one- What was their expertise supposed to be? In the area of Saudi law and court process. In the, on the court process in Saudi Arabia? Yes, Your Honor. Both of them on the same subject, then? Yes, Your Honor. And they're both your experts? No, Your Honor, we had one, and defendant Zameel had one. Okay. Yes, Your Honor. And two opposing positions. And they, of course, they were contradicting one another? Yes, Your Honor. There was some areas they agreed, but on important areas they disagreed, Your Honor, and that- Chips in the night. That's a, that's an issue. I mean, at the very least, I believe discovery should have been granted before these decisions were made, at the very least, because you had conflicting expert testimony. You had our unre- The district court also pointed out that even though Zameel had requested hundreds of thousands of dollars more, it was only awarded $40,000 in the Saudi court. So, the, you know, all the complaints about that court system by your client, I mean, it seemed to be a, not an unfair result for your client. Well, if I could on that, Your Honor. So, we sued Zameel in the Saudi court, and in our view, they created the fire that destroyed our ship. We were seeking many, you know, we were seeking damages. They, you know, effectively counter-claimed and said, we want our port fees, etc., for your shipping here. Which is, you know, ironic, because it was the fire that kept the ship there. And so, all of our claims were denied, and that's our- It was their counter-claim. So, that's what it is. It was their counter-claim. So, the only thing that is the credit to that, in terms of the fairness, is that they didn't get every dollar they asked for. Now, it is- And you got nothing. We got nothing. So, we were left with a burned and bereft ship, and a judgment against us. And again, you know, I think it's not the call of this court to adjudicate who's right and who's wrong about that proceeding. My point is, we made a record below that is unrefuted about the irregularities in it. It's not, to us, a hypothetical issue about what we face going to Saudi Arabia. We did that once. It was a terrible result. We would like to sue in our home forum. It is their burden- Did you have a right of appeal that you didn't exercise in Saudi Arabia? There was, and we did, and it was in effect, and it did not- So, you lost the appeal, too? Correct, Your Honor. Okay. And this suit is for subsequent damages, so we're not trying to get a second bite at that apple. It's the background as to why, you know, it's not hypothetical. It's their burden to show the Saudi courts would be adequate and available and fair arbiters of this case. And again, when I say it's not a generalized indictment, it's both our prior record and also who the defendants are here. This is not to say that you can't bring a, you know, garden variety commercial case in Saudi Arabia. It's to say that when you're suing one of the most powerful family interests in Saudi Arabia that is tied to the royal family that is the royal family of the country- Is that all of the record here? Yes, Your Honor. That is in our expert's report that is detailed- Which is filed here. Yes, Your Honor. That's in the joint appendix. That is not disputed, that who the defendants are, that the defendant's family has all these ties. And in fact, as we submitted subsequent to the proceedings below, the Saudi public investment fund took a 40% interest in defendant Zamil. So, and that's public and was widely published. And so, there's any doubt that there's a strong tie between the Saudi royal family, which controls the public investment fund, and the Zamil family, which controls defendant Zamil. Well, in the scheme of things, how much weight should we give that? Well, I think ultimately the court is going to weigh all, you know, form non-convenience is a fact specific endeavor. It's their burden to show every one of those, you know, that it's available, that it's adequate. And I would submit they haven't shown it. Their evidence did not take on the fairness of the Saudi courts as to these families and these interests. It's just the generalized availability of those courts. They didn't rebut our prior experience with the Saudi court system and the issues there. And there was no discovery provided to test any of these things. So really, they have to rise and fall on the undisputed evidence. They were proffered, which is just generalized evidence about the availability of Saudi courts. Generally, not specific to this dispute. So again, we're not asking this court to make a broad pronouncement about the adequacy of the Saudi courts. It is only to say on the record that was built here, which includes, in addition to our expert testimony, an affidavit from our vice president of the company that includes, you know, his fear and the fear of others in the company to even travel to Saudi Arabia, given who's alleged to have done the damage here. So there's record evidence here that I think is amply warrants overturning the district court in favor of the plaintiff's forum choice. I see my red light is on. If the court has no questions, I'll reserve some time. Thank you, Mr. Hatch. Thank you, Your Honor. Then you've reserved some time. Mr. Moore. Good morning, and may it please the court. Rich Moore from Williams and Connelly on behalf of Zommel Offshore Services Company. Your Honor, the district court did not err, and certainly did not abuse its discretion, when it decided to dismiss this case based on forum non-convenience, because the case clearly belongs in Saudi Arabia. That's where the dispute is centered. In what court in Saudi Arabia? There are, well, there are two potential courts. There's the Board of Grievances, and there's the Saudi Commercial Court. The Board of Grievances has discretion to hear the claims against both defendants. So they can, in fact, be heard by the Board of Grievances in a single court in Saudi Arabia, if the Board of Grievances exercises its discretion to do so. Wait, so it sounds like we still don't really know what court or courts it would be heard in in Saudi Arabia. Doesn't that have to be part of the equation at this stage, when the motion is pulled on? That's correct, Your Honor. Your Honor, we do know which court or courts. Those are two courts specifically, the Board of Grievances and the Saudi Commercial Court. And that's what we have to-  We don't say, we don't agree that they must be split. It's possible that they may- Possibly be split. Okay, so we're back to we don't really know what court. Well, the reason it's- We just know the country. Is that all that's required? No, that's not correct, Your Honor. There are cases. It is not enough to say that the claim can be heard in the courts of a country. There are cases of that effect, like you can't say in Australia. But that's not what we did here. The reason you have to identify the specific court is because you have to show whether those claims can be heard in that court. And whether there are jurisdiction over the claims in that court or courts. In this case, there are two- It has to be adequate and available, Mr. Jackson. That's exactly right. And they are adequate. They are available. And they are adequate. And the convenience factors plainly favor those courts. The two courts. Exactly. Well, no, Your Honor, I don't agree. There are two potential courts. Again, two potential courts. The Board of Grievances plainly has jurisdiction over the Saudi Ports Authority because it's a government entity. The Saudi Commercial Court has jurisdiction over my client, ZAML, because it's not a governmental entity. So there is jurisdiction in- So would it be heard in both those courts or one of those courts? It could be heard in one court if- It's within the discretion of the Board of Grievances, so I can't say whether it's going to exercise that- That's the Grievance Court. That's right. They call that the Grievance Court. That could hear it all. That's right. It has discretion. But it'd have the discretion to hear it all. Correct. So I can't say whether it's going to exercise that discretion. But the other court wouldn't have the discretion to do it all. That's right. But it- But in the Grievance Court, it's the one that's tied to the government. The Grievance Court hears claims against the Saudi government. It has discretion to bring in a claim, in this case against a private party, if it relates to the case. Now whether- What about the- Mr. Hatch talked about the lack of discovery. The court denied discovery, but there's no discovery- So does that mean that we think Mr. Hatch's complaint is true? The allegations, factual allegations, is true? On certain issues, Your Honor. How do you know that? Well, because the allegations- First of all, the allegations that the court- that they've talked about with regard to the first case. Those allegations, they're just allegations, right? There's no evidence in the record that all these nefarious things they say your client did. It's just in the complaint. So let's just take it for what they are, the allegations. Number two, they're not relevant to this case. He said that there were these specific instances of misconduct in the first case. This case is not about what happened in the fire. This case is about what damage occurred in 2022, which allegedly an abandoned ship that had been there over 10 years, they're claiming was looted, which is not true. The equipment was taken out of the ship so it could be removed from the water. So that's what this case is about. Is that his complaint, that it was- Yes, that's what this case is all about. But you've recited your favor there. That's what he's alleging in his complaint. That's all that's been alleged. No, he's alleging that it was looted and you said that was not true. But we haven't had discovery, so it is true right now. It's true that he says the equipment was taken out of the vessel before it was removed from the water. So we accept that as true. And my point is that the allegations related to what happened in the first case are not related to this case. This is all about what happened in 2022 at that stage after the boat had been resting in the water. And in addition, he talks about that as being specific evidence related to this case. The only thing specific about this case is this first case that we had, in which, as your honor correctly points out, my client won liability, but won less than a third of the amount it was seeking in damages. So that's all you really need to know about the first case. To the extent they're relying on that as specific evidence of unfairness of their client, that's not what happened. And that case is borrowed by Ray Stutakata. And secondly, the other- Well, they lost everything in that case. They didn't win any of their claims or their appeal, correct? That's right. They lost on liability. We won on liability, but the court did not rule in our favor entirely on damages. In fact, only awarded less than a third. That's a relevant consideration when you're arguing that the Saudi courts are inadequate because it's not what happened the first time. And that's a factor to consider. Second, the only specific evidence that he cites is this implicates the Saudi government. Well, that's no different than the long line of cases that we've cited in which courts have repeatedly found that they are adequate, including the Shields case. That was a case where they alleged a conspiracy against the Saudi royal family. And that court said, apparently the Saudi royal government's not as concerned about being sued as they say they are because they have a special court that allows it to be sued. So that doesn't distinguish it from any of the other cases. The only other specific factor that he said applied to this case, that's not just a general factor that's been repeatedly rejected, is that they have one paragraph in one declaration in which their corporate representative said, I would be afraid to go to Saudi Arabia. Well, that's again exactly the kind of allegation that is made in every single case, including the Shields case. And the courts have said, that's not enough. You can't say, I'm afraid to go to Saudi Arabia. That in itself is not enough. The cases they cite involve drastically higher evidence of specific prejudice against a particular party. They have been accused of murder in one case. They have organized a coup in another case. Here we're talking about the most plain vanilla complaint you can possibly imagine involving what the Saudi Arabian government allegedly do. They own the port's authority, which leased the port to my client, which ran a port operation. And they claim that the boat was damaged after they abandoned it there. So the idea that the Saudi government is going to interfere in this case, I submit, your honor, is far-fetched. It's a default question that he raises. The default question, your honor, is they cite one case. First of all, it was never raised in the district court.  This issue was never raised in the district court. They did not raise the issue of default in the district court. And so it's waived. They say they didn't have an opportunity to raise it. And it's true they had not gone into default as of the time of the argument. That is correct. But what makes it worse is in their argument, they say they did raise it. They did point out the fact that the co-defendant, Saudi port's authority, had not yet appeared in their brief. But a defaulting defendant got the benefit of a forum non-convenience ruling. That's right. And that's perfectly appropriate. It is? Yes, it is. Because the forum non-convenience is a procedural rule of the forum. It is within the court's inherent authority to grant a forum non-convenience argument. So it's not a matter of whether they defaulted or not. And importantly here, this is the key fact. When we, my client, Zommel, raised the forum non-convenience argument, it also addressed the argument. You're saying that a defendant doesn't even have to answer. Can just sit tight and the judge transfer it or issue a forum non-convenience ruling. That's right. It's in the discretion of the judge. And reward the defaulting party. It's not rewarding the defaulting party. It's all about the convenience of the court. Well, if you get a defaulting party, what my recollection is, all you've got to do is determine the damage award. The defaulting party. You default as a liability, and the question is how much? It has limitations on the types of arguments it can make. But that's, again, not, in this case, the key fact is, the arguments were made on behalf of both parties. My client, when it raised forum non-convenience, it didn't just address. Did your client default?  My client denied default. My client appeared. It raised forum non-convenience. It addressed forum non-convenience both as to my client and as to the party who had not yet appeared, the Saudi Ports Authority. So, for example, in the question of sovereign immunity, my client said, there is no sovereign immunity question as to the Saudi Ports Authority. Statute of limitations. No statute of limitations problem as to the Saudi Ports Authority. So that puts this case on an entirely different footing than the cases they cite, where a party only raises the arguments as to itself and does not address the arguments as to the other party. That's important, because that would be a problem if the court did not address. And not only did we raise it, they responded. So everybody had a chance to be heard on the question as to both defendants at the trial court. And the district court did not abuse its discretion when it determined that even though Saudi Ports Authority had not yet responded, it had the information that it needed to make the decision. That's the important thing. Did the court have the information? It did. It looked at all of this. It considered all of this. It considered sovereign immunity as to the Ports Authority. Considered sovereign immunity as to my client. Considered convenience as to my client. Considered convenience as to the Ports Authority. All of that was taken into consideration by the district court when it issued a very thorough and reasoned opinion. The district court conducted an oral argument on this? It did not actually have oral argument. We showed up at the argument. It ruled from the bench. And later that day or the next day issued an opinion. So it was decided on paper. Correct. That's right. But the court, it issued a thorough opinion, went through all of these factors, including, again, as to the non-defaulting party. So the case that they rely on, the Tyco case, the unpublished case out of the 11th Circuit, that's just a different case. That just talks about what the defaulting party can and can't do. It doesn't address the question here, which is what happens when one defendant makes the argument on behalf of both defendants. And again, the Form 9 convenience is all about the convenience of the court. It's within the court's authority to decide whether this case, which has no connection, whatsoever, to Virginia, other than the fact that that is where Advent Fort is headquartered. That's not enough to outweigh all the other factors that point to Saudi Arabia. And especially true when Advent Fort is a company that does all of its business overseas. That's what they do. They go around different places around the world doing anti-piracy measures, et cetera. So the district court appropriately pointed out, under those circumstances, yes, the plaintiff's entitled to some deference. But it's much less true when you have a plaintiff who's doing their business overseas. So in this case, in particular, it's doing business in the Red Sea. It pulls its ship into a Saudi Arabian shipyard. It's perfectly reasonable that it would expect any dispute arising out of repairs done on the ship at the Saudi shipyard would be handled in that jurisdiction, not back in Virginia. So all of the factors point to Saudi Arabia. It's available. The courts are adequate in Saudi Arabia. No courts ever held that Saudi Arabian courts are inadequate, except for one case they cite involving an employment discrimination case where the plaintiff was not allowed, the Peterson case. That case, the plaintiff was not allowed to testify in an employment case because it was non-Muslim. But that's been repealed. There's no law now in Saudi Arabia that prohibits women and non-Muslim witnesses. So in addition, that case was another case subsequent rejected that analysis and said it was not adequate. So the court's asking, they're asking you to be the first court to find that these two courts, in particular, are inadequate. And there has been a case, the DNS Consulting case, that recognized that the Board of Grievances was an adequate court. So the courts were adequate. They are available. There's also no question that the claims that they're seeking here, conversion, basically breach of contract, all of those claims can be brought into Saudi courts. So the Saudi courts are available. They're adequate. I think there's any real dispute that the convenience factors weigh heavily in favor of Saudi Arabia. That's where the ship is. That's where the security system is. That's where the witnesses are. That's where the internal documents that are going to be, I guess, talking about what type of security was available at the facility. They're all in Saudi Arabia. So for all of those reasons, everything points, in this case, to Saudi Arabia. And that's why the court appropriately concluded that it was the appropriate forum. The other question, Your Honor, with regard to the default issue, is that courts also do, in fact, in 1404 cases, when there is a defaulting defendant, we've cited cases where they do, in fact, transfer cases under 1404. I forgot to mention that earlier. So there are cases. It's unprecedented, he says, under Form 9 convenience. But under a very, very close cousin, which is the 1404 transfer statute, there's a case right on point, the Acosta case, which says that you can do that. And in addition to that, also, there are lots of cases that say defaulting defendants can benefit from a merits defense brought by a non-defaulting defendant. That goes all the way back to the 1800s. The Supreme Court has said that would be absurd to say that one defendant doesn't get to take advantage of a defense offered by a non-defaulting defendant if it's offered. And I would say, also, it would lead to a really bizarre result here, where the district court has gone through all the factors, made its determination. This is the most convenient court. And somehow, you would allow one party to, in sort of a procedural gotcha moment here, that would encourage gamesmanship. And it would sort of undermine the whole purpose of the Form 9 convenience. In regard to discovery, Your Honor, I will point out, also, that the whole purpose of the Form 9 convenience analysis is that you don't have to have discovery in the forum jurisdiction. I mean, that's the whole point of this, is that this needs to be transferred to another court and not be heard here in Virginia. So the courts, although the court can order discovery on Form 9 convenience, it's disfavored for that reason. It's a threshold determination. It's frequently decided on declarations and affidavits. And so there's no real, they haven't really identified any kind of discovery that would make any difference here. I mean, they want to have discovery on what happened in the first case, primarily, which, as I said, is irrelevant. And then the only other thing they talked about is how many people speak English. And I don't think that's really a valid basis for opening up discovery in this case. So they haven't identified any real discovery that would make any difference under the court's analysis. So the court appropriately, in its discretion, denied their motion. This was raised in the trial court. And importantly, this is abuse of discretion. And an experienced trial judge, Judge Brinkema, made that decision that she didn't need any discovery to decide this. And I think that should be affirmed. Your Honor, I don't know if you have any questions on personal jurisdiction, but I will point out that that is also alternate grounds for affirmance. That the district court didn't rule on. District court didn't rule on. So what are we to review? Nothing to review. I'm just saying, pretty clearly, no jurisdiction here. We're talking, there are two cases, Consulting Engineers and Ellicott, which are this court's cases, which are very much right on point on personal jurisdiction. And they've held, even in cases where you have a contract that was performed entirely overseas, and it's like we have here a one-off contract, even when the defendant reaches into the forum state to initiate contact, which is not what happened here, that was not enough. So importantly, in this case, my client didn't do anything to reach into Virginia. They alleged they saw a website, they saw an advertisement in a national publication. So you don't need to reach personal jurisdiction, but there's no personal jurisdiction over my client. So for those reasons, Your Honor, we believe that the district court did not abuse its discretion, and Your Honor should affirm this decision. Thank you very much, Mr. Brown. Mr. Bohr, I'm sorry. Good to have you. Mr. Hatch? Thank you, Your Honors. Just a few points for you. First of all, my excellent co-counsel did not disagree with me on any of the three unprecedented natures of the decision below, so I'll just point that out. He did say, well, it is true, never has this been done in forum nonconvenience, but with a defaulting issue, it's sometimes done. He says a close cousin of 1404. As you all know, 1404 is for domestic transfers. You do not have issues in 1404 about whether the receiving court is a adequate enough. What about opposing counsel's point that appellant doesn't have any connection to, I'm sorry, that there's no connection to Virginia other than the headquarters there, and that all the business is done overseas? So it's our home forum. Our headquarters is here. We, in our affidavit from our vice president, said we have witnesses here. Judge Brinkema said that's just a bald assertion. We asked for discovery mutually on this, so I'm happy to supply more information if we would get the discovery on that. But we conducted our business from here in Virginia. Obviously, the ship was in the port of Saudi Arabia. There's no dispute about that. But we would have witnesses here in the United States, including in Virginia. And Virginia has an interest in preserving the rights of its citizens vis-a-vis foreign acts of tort. So 1404 is nothing like this because you don't have to show up as a defendant in 1404 and say I won't assert sovereign immunity or things like that. It's just not pertinent. Second of all, there was this point about whether he started with whether it go in one court or two. I would just direct the court on 371 of the joint appendix. This is where Judge Brinkema said the experts disagree about whether this could go in one court or two. I'm assuming it's going to two courts in Saudi Arabia, but you don't have any cases, Mr. Hatch, that says that can't happen. So I'm going to send it over on the presumption it's going into two courts. And again, no cases, to my knowledge, and you didn't hear one today from the other side, has ever forced a home forum plaintiff to go do that in a foreign court. Now, on the discovery point, a couple notes. One, he says it's bare allegations of the misconduct in the prior case and that it's irrelevant. Well, first of all, as I think Judge King said, I mean, they're allegations. They are the only evidence that's in the case. They are taken as true. They're undisputed at this point. Secondly, we asked for discovery into that. That was one of our items of discovery, if Judge Brinkema were inclined to grant this motion, was into ex parte communications between Zamil and the court in the prior proceeding. He says that's irrelevant. That's a done case, res judicata. No, it's not relevant. It goes directly to adequacy. I mean, the proposition is we have to go back into that same court and sue the same defendant related to the same vote. If we could develop evidence that there were ex parte communications, that there was witness intimidation, obviously that, I believe, would be relevant to adequacy. I don't ultimately think discovery is necessary because it's their burden and they haven't shown it. But my point being, you certainly can't grant it, in my view, without allowing discovery into these items on the record that exists today. Another example on the discovery front, he just told you that the documents are located in Saudi Arabia. Well, what's the record, undisputed evidence of that? I mean, they say the documents are located in Saudi Arabia. We asked for discovery into that, too, including where the witnesses are located. We didn't get it. So you basically have a bare assertion that there are documents located in Saudi Arabia. Well, we have documents located here in the United States. The court has no way to evaluate the relevance of those documents, what language they're in. And I think that is another area where, respectfully, Judge Frankema erred because she seemed to assume that there was this great weight of evidence and documents in Saudi Arabia that's just not supported by the record. On the issue of default, very quickly, I mean, the default didn't occur until the briefing was done. I moved for the default prior to the argument on their motion. We said in our briefing, at a minimum, the port authority would have to show up and move to dismiss to obtain its own form non-convenience dismissal. That's what we said in our briefing. They never did it. We moved for default, secured default the same day as the argument. Judge Frankema, and I agree, we showed up and Judge Frankema gave us the ruling. She recognized that the other defendant was in default. So there was nothing to point out to her. She recognized that, and she was not concerned with that fact in her ruling. So it was before her, and we preserved it in every way you can possibly preserve. They never even moved, because they never appeared. So I don't think we could waive something when they didn't move and ask for it themselves. Just finally, one last point. I do think the case law, and Judge Thacker, I think you were on the panel in the DeFrederico case. These cases are highly fact specific, as many courts have noted. But that was a case that talked in great detail about the importance of a citizen plaintiff's home forum choice. And Judge Frankema relied on a line in that case where the court said, we're not considering here to what extent that deference is due to a corporation that does business overseas. We're not considering it. The court did not rule that there is less deference due. And the two out of circuit cases the court referenced in saying, we're not considering this, is an Eighth Circuit case, the Reinwald case, that itself did not consider the issue. It had a natural US citizen. And it just said the Ninth Circuit has recognized that there may be less deference due to a corporation. So Judge Brinkema took that into her opinion and said there is not deference due to the plaintiff's forum choice. This court has never said that. And respectfully, I think on this record, the deference due to the forum choice is really compelling here, and ask this court to reverse the decision below. Thank you. Thank you very much, Mr. Hatch. Judge Thacker and I will come down and greet counsel. And then counsel will come up and greet Judge Floyd. And then Judge Floyd, Judge Thacker, and I are going to step out for about five minutes. And then we'll come back in and talk to the students. That's the plan.  This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Robert B. King, Stephanie D. Thacker, Henry F. Floyd